COLE, Judge.
The pivotal question presented on appeal is whether the home rule charter or state law validated an amendment by the La-fourche Parish Council of the adopted budget of Lafourche Parish for the fiscal year 1985.
The Parish of Lafourche is governed pursuant to a Home Rule Charter approved on August 14, 1976. The Charter provides the governing authority shall be the Lafourche Parish Council consisting of sixteen members, one of whom shall be elected at large. The remaining fifteen members shall be elected from single member districts. The member elected at large shall be president of the parish and the presiding officer of the governing authority.
It is the duty of the president to submit a specific budget. This duty was performed in 1984 by the president, Cyrus “Bobby” Tardo, plaintiff in this suit. The budget was formally adopted on October 25, 1984, as Ordinance No. 1528. Thereafter, on November 29, 1984, an amended budget was proposed by the Lafourche Parish Council, the defendant in this suit, without the president’s prior approval. This proposal was adopted on January 9, 1985, as Ordinance No. 1538. The president, pursuant to powers granted him by the Charter, Article 1, Section B(4), vetoed two line items in the amended budget. The Council voted to override this veto.
The president filed suit on February 1, 1985, seeking a temporary restraining order and subsequently a preliminary injunction enjoining and prohibiting defendants from enacting, publishing or enforcing Ordinance No. 1538. The petition alleged the amended budget was adopted in violation of the Home Rule Charter. The Council responded stating Ordinance No. 1538 amended the adopted budget in accordance with the provisions of the Home Rule Char *999 ter and the Louisiana Local Government Budget Act, La.R.S. 39:1301, et seq. The trial court granted the preliminary injunction after a hearing on February 25, 1985. The trial court found the amendment of the budget was a violation of the Home Rule Charter and was not required pursuant to La.R.S. 39:1309 because a “change in operations” had not transpired. From the judgment of the trial court granting the preliminary injunction sought by plaintiff the Council has appealed.
HOME RULE CHARTER
It is clear the amendment to the adopted budget took place in violation of the Home Rule Charter.[1] We adopt the following reasons set forth by the trial court:
“In reviewing Article 5 of the Home Rule Charter, this Court notes that in Section A dealing with budgets, paragraph 3, they specifically set forth that the governing authority, which in this *1000 case is the Lafourche Parish Council, may amend the budgets before adoption. There is no question that the proposed amendments to the budget came after the budget was adopted on October the 25th, 1984. Therefore, it is very clear to this Court that Section A, paragraph 3 of Article 5 was not complied with. I don’t think anyone today has made that contention.
Then we get to Paragraph 5 of Section A of Article 5 dealing with amendments after adoption. In subparagraph C, which seems to be the pertinent provision of the Charter that is involved with the issues at hand today, that provision begins by stating and I quote, ‘If during the fiscal year it appears probable that the revenues available will be insufficient to meet the amount appropriated ... ’ and note in particular the language ‘during the fiscal year.’ Now it has already been noted that the proposed amendments were made at a regular meeting on November the 29th, 1984. The Code of Ordinances for Lafourche Parish in Article 2, Section 204 sets the fiscal year as a calendar year for Lafourche Parish. It is obvious that the action taken was not during the fiscal year with regard to the proposed amendments. Even though it may be argued that the final amended budget was adopted in January, 1985, the point remains that this did not take place initially during the fiscal year and, of course, would be improper.
Subparagraph C dealing with reduction of appropriations goes on to talk about deficits. We’ve heard much testimony today about whether or not there were deficits and what is a deficit. The language I quoted to you earlier states that when it appears probable that ‘the revenues available will be insufficient to meet the amount appropriated’ — in this Court’s mind it is very clear that’s a deficit that they’re talking about in this particular paragraph.
There has been no evidence today as far as this Court is concerned that there was a deficit in the Parish government in November of 1984. Mr. Charles Maggio who has been a dedicated public servant now for some eleven and a half years in this Parish testified that it was not until the latter part of the year, in particular-he said in the latter part of December and early part of January before he really realized some of the changes that may be occurring in the revenues that this Parish could expect. He also testified that he had nothing to do with the recommendations on the amended budget. Suffice it to say there has been no evidence, which I stated before, of any deficit. Therefore, the Court feels that sub-paragraph C was not complied with by the Lafourche Parish Council.
There’s been some argument about the language and the meaning of the language ‘in any event the governing authority shall take action as it deems necessary to prevent any deficit’, but there is no need for the Court even to attempt to interpret that provision at the present time because as I’ve already noted, I found no evidence of a deficit.”
As regards the factual conclusion of the trial court that there was no deficit facing the parish government which would invoke the amendatory procedures of Article V A 5(c) of the Charter, we note particularly the significance of the words “revenues available.” The provisions of Article V A 5(c) address the situation where “it appears probable that the revenues available will be insufficient to meet the amount appropriated.” In this context the surplus carried over from the preceding year must be considered. Without doubt it is an available revenue. And, the evidence shows clearly that with this surplus (beginning balance) included there was no prospect of an actual deficit. Both the original budget and the amended budget reflect an anticipated surplus. The evidence offered by the Council as to the probability of a deficit was of a speculative nature and insufficient to overcome the impact of the surplus funds carried over to the new fiscal year.
The Council argues the phrase “in any event” contained in Article V A 5 (c) gives it the absolute power to amend the budget. *1001 We reject this argument. Paragraph 3 of Article Y A of the Charter speaks to amendments by the Council before adoption of the budget. Paragraph 5 thereof deals with amendments after adoption. This distinction negates the idea of an unfettered right to amend the budget. Otherwise, why the distinction? Also, to make it clear there were limitations upon the budgetary powers of the Council the drafters of the Charter, by Article II A 15(b), provided the Council is to appropriate money as provided in Article V. Still further, since paragraph 3 of Article Y A provides the Council does have the absolute right to change the budget before adoption, the implication is clear there is no such absolute right after adoption. We think the scheme of the Charter contemplates that except for emergency appropriations the executive, not the legislative branch of local government, shall initiate supplemental appropriations, reduction of appropriations, and transfer of appropriations. Underlying this scheme would seem to be concern for budgetary stability once adoption (tantamount to actual appropriations for specified purposes) takes place. Any change in this aspect of Lafourche Parish home rule is up to the people, not this court. We conclude the term “in any event” as used in Article V A 5(c) refers to the mandatory remedial actions taken and recommended by the President where it appears probable available revenues will be insufficient to meet the appropriations contained in the budget.
In addition, the contention the Lafourche Parish Council has plenary legislative authority is without merit. Certainly, the Council “shall be vested with and shall exercise all legislative power.” Lafourche Parish Home Rule Charter, Article II, Section A(11). However, as regards budgetary authority and its procedural implementation, Article V of the Home Rule Charter sets forth the bounds of this legislative power. The procedures for budget adoption are set forth to achieve a desired balance between the executive powers of the President and the legislative powers of the Council. This balance of power was established by the people of Lafourche Parish and a proper function of this court is to recognize and .protect this aspect of self-government. See Freeman v. Treen, 442 So.2d 757 (La.App. 1st Cir.1983), for further discussion.
LOUISIANA LOCAL GOVERNMENT BUDGET ACT
La.R.S. 39:1303(C) provides:
“It is the intent of the legislature that this Chapter shall apply to political subdivisions operating under a home rule charter or plan of government adopted or in existence pursuant to and under the authority of Article VI of the Louisiana Constitution of 1974 to the extent that governments operating under home rule charters are subject to this Chapter as minimum standards.”
Thus, the Louisiana Local Government Budget Act, La.R.S. 39:1301, et seq., is applicable to Lafourche Parish which operates pursuant to a home rule charter.
The Louisiana Local Government Budget Act provides for minimum standards, i.e., the barest framework of rules which must be followed for the valid operation of a political subdivision pursuant to a home rule charter. The Lafourche Parish Home Rule Charter does not provide for amendment of its budget after adoption but prior to the beginning of the fiscal year, except in an emergency. The provision of the Local Government Budget Act pertaining to the amendment of budgets is La.R.S. 39:1309 which provides,
“When the governing authority has received notification pursuant to R.S. 30:1310, or there has been a change in operations upon which the original ■adopted budget was developed, the governing authority shall adopt a budget amendment in an open meeting to reflect such change. When an independently elected parish official has received notification pursuant to R.S. 39:1310(A), or when there has been a change in operations upon which the original adopted budget was developed, the independently elected official shall adopt a budget *1002 amendment and publish such amendment in the official journal as described by R.S. 39:1306(B). In no event shall a budget amendment be adopted proposing expenditures which exceed the total of estimated funds available for the fiscal year.”
By its terms La.R.S. 39:1309 does not require the amendment to an adopted budget be made during the affected fiscal year. However, the provisions of La.R.S. 39:1310 which require amendment do by their terms contemplate such action is to be taken during the fiscal year.[2] A viable construction of La.R.S. 39:1309 would allow the governing authority (Council) to amend an adopted budget prior to the fiscal year only if a “change in operations” has occurred. This is the construction given the provision by the trial court. We deem such a construction to be correct. If a “change in operations” has occurred and a concomitant change in the budget becomes necessary, then to allow the budget process to achieve the function of forecast and allocation of resources the amendment should occur at the time of the “change of operations.” A restrictive construction of La. R.S. 39:1309 allowing amendment only during the fiscal year would limit the benefit derived from budgeting. It could also result in a loss of resources because the operation of the governing authority would be limited to proceedings as discrepancies arose due to the change. Therefore, as the minimum standard, La.R.S. 39:1309 is the applicable provision to ascertain the validity of the budget amendment in this case.
In addition to the “change in operations” standard as the trigger for the amendment process, La.R.S. 39:1309 provides an additional substantive standard which the amendment must meet, i.e., the amendment must be made “to reflect such change.” The substantive standard requires the amendment to bear a suitable relationship to the change in operations which has occurred. Thus, an amendment unrelated to the change in operations would be invalid thereby preventing the potential for abuse of the procedure provided by La.R.S. 39:1309.[3]
In the present case the trial court found,
“[Cjertainly there’s been no evidence that when the proposed budget amendments were suggested on November the 29th, 1984 that there had been a change in operations.”
The term “change in operations” was considered by the trial court to require some change in the programs of the Parish, not a change in the way the economy is progressing. The court felt there should be a real and substantial change, not one merely speculative in nature. Expert testimony introduced by the Council demonstrating a downward economic progression in various revenue producing elements of the adopted budget was held not to meet the burden of proving a “change in operations.” Upon careful review this court will defer to this factual determination by the trial court. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). And, while we will not attempt *1003 a comprehensive definition of what is meant by a “change in operations,” we suggest such things as curtailing, eliminating or adding a particular service for the people would meet the criteria, as well as adopting additional revenue producing measures to permit the enhancement of services for the people.
Additionally, this court is not satisfied the budget amendment was enacted to reflect such change as the council contends required the amendment. The council suggests the forecast of a 5% to 10% depression in the economy would result in decreased revenue collection, therefore requiring an amendment to the adopted budget to meet the new forecast. However, the budget amendment does not reduce the projected revenue collection of the general fund and only reduces projected expenditures in the general fund by approximately 1V2%. Certainly, these amendments of the general fund expenditures are not sufficient to meet the reduction in revenues which would result from a depressed economy of 5% to 10% as suggested by the Council’s economic experts. Thus, we note certain amendments contained in Ordinance No. 1538 are not reflective of the proposed change which would require the amendments.[4] Accordingly, for the foregoing reasons Ordinance No. 1538 must be invalidated. The judgment of the trial court granting the preliminary injunction is affirmed. Costs in the amount of $1,426.34 are assessed against the Council.
AFFIRMED.

.Lafourche Parish Home Rule Charter, Article V, Section A. Budgets provides,
1. Submittal of Budgets
At least seventy-five days before the beginning of each fiscal year, as established by the governing authority, the president shall submit a line item operating budget and a capital budget in accordance with accepted accounting procedures in a format established by the governing authority. The budgets so submitted shall be balanced.
2. Budget Message
The president shall submit with the budget a message containing recommendations concerning the fiscal policy of the parish, a description of the important features of the budgets, and an explanation of all major increases or decreases in budget recommendations as compared with expenditures for prior years.
3. Action of the Budgets
The governing authority may amend the budgets before adoption except that no item for debt service shall be reduced below the amount certified by the president as necessary. In no event shall the governing authority cause the total proposed expenditures to exceed anticipated revenue. If the governing authority shall fail to act on either budget within the time limit as provided in Section 2, it shall be adopted as submitted upon by the president.
4. Adoption of Budgets
The governing authority shall hold a public hearing and shall adopt budgets not less than thirty days before the commencement of the fiscal year. Any resident of the parish shall have a right to speak on the proposed budgets at the public hearing. The budgets as adopted shall constitute an appropriation of funds for all purposes contained therein. A budget ordinance shall become effective on the first day of the fiscal year, unless otherwise provided therein.
5. Amendments after Adoption
a.Supplemental Appropriations
If during the fiscal year the president certifies that there are available revenues in excess of those estimated in the budget, he shall present a supplemental budget for the disposition of such revenues. The governing authority by ordinance may make supplemental appropriations up to the amount of the excess.
b. Emergency Appropriations
To meet a public emergency affecting life, health, property, or the public peace, the governing authority may make emergency appropriations. The appropriations may be made by emergency ordinance in accordance with the provisions of Article IV, Section D. To the extent that there are no available unappropriated revenues, the governing authority may borrow money to meet the emergency. The repayment shall be a fixed charge upon the revenue of the following year and shall be included in the operating budget for that year.
c. Reduction of Appropriations
If during the fiscal year it appears probable that the revenues available will be insufficient to meet the amount appropriated, the president shall report to the governing authority without delay, indicating the estimated amount of the deficit, any remedial action taken and recommendations as to any other steps to be taken. In any event, the governing authority shall take action as it deems necessary to prevent any deficit. The repayment shall be a fixed charge upon the revenue of the following year and shall be included in the operating budget for that year.
d. Transfer of Appropriations
During the fiscal year the president may transfer part or all of any unencumbered appropriation balance among programs within a department or office of the governing authority. Upon written request by the president, the governing authority may transfer part or all of any unencumbered appropriation balance from one department or office to another.
e. Limitations and Effective Date
No appropriation for debt service may be reduced or transferred, and no appropriation may be reduced below any amount required by law to be appropriated or by more than the amount of the unencumbered balance thereof. The ordinance authorizing a supplemental appropriation, or a reduction or transfer of appropriations may be made effective immediately upon adoption but may not be adopted at the same meeting as introduced.

. La.R.S. 39:1310 provides in pertinent part:
"A. The adopted budget and any duly, authorized adopted amendments shall form the framework from which the chief executive or administrative officers and members of the governing authority of the political subdivision shall monitor revenues and control expenditures. The chief executive or administrative officer shall advise the governing authority or independently elected official in writing when:
(1)Revenue collection plus projected revenue collections for the remainder of the year, within a fund, are failing to meet estimated annual budgeted revenues by five percent or more.
(2) Actual expenditures plus projected expenditures for the remainder of the year, within a fund, are exceeding the estimated budgeted expenditures by five percent or more.
(3) Actual beginning fund balance, within a fund, fails to meet estimated beginning fund balance by five percent or more and fund balance is being used to fund current year expenditures.”

. Requiring the amendment "to reflect such change” is of particular importance where the adopted budget is comprised of both general and special funds. No latitude would exist for the governing authority to amend the budget of a fund unaffected by the change.

. $31,152.68 of the $59,834.68 in expenditure reductions in the general fund out of total expenditures in the fund of $3,658,109.72 are salaries for two positions on the Parish President’s staff. The positions are Executive Secretary and Assistant Secretary-Treasurer.