Dear Mr. Grimmer:
Our office received an opinion request from you concerning the veto of Ordinance 09-06, which affects the Livingston Parish Council 2009 Operating and Capital Budget.
The pertinent facts are summarized as follows. On November 24, 2008, the parish president introduced Ordinance 08-59 to adopt the 2009 Operating and Capital Budget. This ordinance was adopted by the Council on December 29, 2008 and approved by the president on the same day. As no facts to the contrary have been presented, we assume that the ordinance approving the budget met all of the procedural requirements of the Livingston Parish Home Rule Charter (Charter) and the Louisiana Local Government Budget Act (La.R.S. 39:1301, et seq.). On March 26, 2009, the Livingston Parish Council passed Ordinance 09-06, which purportedly amended the operating budget for Livingston Parish that was adopted in December, 2008. The parish president subsequently vetoed Ordinance 09-06, and the Council overrode that veto on April 23, 2009.
You have asked our office for an opinion as to whether the Livingston Parish President has the authority to veto Ordinance 09-06, and whether the Livingston Parish President and administration are bound to implement the operating budget amendments, as adopted in Livingston Parish Ordinance 09-06. Your letter indicates that Ordinance 09-06 amends the operating budget in eight ways, as described below:
 • Section 1: Transfers $160,000 from the grant budget to the General fund.
 • Section 2: Increases the Health Insurance Budget by $117,000 to cover employee dental care. *Page 2 
 • Section 3: Reduces the budget for the Parish Transportation Act Fund from $1,942,000 to $1,442,000 (a $500,000 reduction), changing the ending fund balance, and includes a corresponding reduction in the general ledger account line item for Construction in Progress-Roads. Additionally, Section 3 changes the language concerning the local match for the state safety grant for Eden Church Road.
 • Section 4: Transfers appropriations within the OEP fund related to the OEP Director's Salary and also eliminates the transfer of $742,361 from the Road Fund to the OEP Fund.
 • Section 5: Eliminates the transfer from the Road Fund to the OEP Fund and transfers $2,097,191 from the Road Fund to the Capital Outlay Fund. The $2,097,191 amount reflects the sum of the $742,361 transfer from the Road Fund to the OEP Fund, which was eliminated in Section 4, and the $1,354,830 projected ending balance in the Road Fund for 2009.
 • Section 6: Increases an appropriation in the Capital Outlay Other Fund by changing General Ledger Line Item 568200 Construction in Progress-Roads from zero to $2,097,191.
 • Section 7: Increases the District Attorney's expenditures by $15,000.
 • Section 8: Increases the Legislative Expenditures to reflect the increase for Public Information Officer by $31,500 and makes adjustments related thereto.
The procedural validity of the ordinances is not questioned in your opinion request. Thus, we assume both Ordinance 08-59 and Ordinance 09-06 have complied with relevant state law and home rule charter requirements.
The Louisiana Local Government Budget Act and the LivingstonParish Home Rule Charter
First, we must address whether the Council had the power to amend the budget after the fiscal year began and the budget for that year had already been formally adopted in accordance with applicable laws and rules. Livingston Parish has adopted a home rule charter form of government in accordance with La.Const. art. VI, § 5 and La.R.S. 33:1395. Political subdivisions operating under a home rule charter form of government are subject to the minimum standards established in the Louisiana Local Government Budget Act. La.R.S. 39:1310 is pertinent to budget amendments and provides as follows:
 When the governing authority has received notification pursuant to R.S. 39:1311, or there has been a change in operations upon which the original adopted budget was developed, the governing authority shall adopt a budget amendment in an open meeting to reflect such change. When an independently elected parish official has received notification pursuant to R.S. 39:1311(A), or when there has been a change in operations upon which the original adopted budget was developed, the independently elected official shall adopt a budget amendment and publish such *Page 3 
amendment in the official journal as described by R.S. 39:1307(B). In no event shall a budget amendment be adopted proposing expenditures which exceed the total of estimated funds available for the fiscal year.
Jurisprudence Interpreting La.R.S. 39:1310
Unfortunately, the jurisprudence interpreting La.R.S. 39:1310 is not harmonious. In Tardo v. Lafourche Parish Council, [1] the First Circuit Court of Appeals addressed whether the Lafourche Parish Council could amend its budget prior to the start of the fiscal year. In that case, the parish home rule charter provided for amendment of its budget after adoption but prior to the beginning of the fiscal year only in cases of an emergency.[2] The court determined that, under La.R.S. 39:1309, [3] the governing authority can only amend the budget prior to the fiscal year and then only if a "change in operations" has occurred.
In Yenni v. Parish Council of Parish of Jefferson throughEvans[4], the Fourth Circuit Court of Appeals had to determine whether the Jefferson Parish Council had the power to amend the budget during the fiscal year, despite the fact that the parish's home rule charter did not contain specific authority or requirements for making budget amendments. The court determined that the La.R.S. 39:1310 merely provides for two instances where it is mandatory that the governing authority amend its budget (i.e., where the governing authority has received notification pursuant to La.R.S. 39:1311, or where there has been a change in operations upon which the original adopted budget was developed).[5] Thus, in the court's opinion, the council had the power to amend the budget during the fiscal year, because it was not otherwise specifically prohibited by the home rule charter or ordinance.[6]
Therefore, the First Circuit and the Fourth Circuit conflict in their treatment of the statutory standard in that the former allows budget amendments only if one of the two prerequisites of La.R.S. 39:1310 have been met (i.e., where the governing authority has received notification pursuant to La.R.S. 39:1311 or where there has been a change in operations upon which the original adopted budget was developed), whereas the latter allows budget amendments where there are no legal prohibitions against such amendments.
Analysis under Tardo Tardo implies that the budget may only be amended when one of the two prerequisites of La.R.S. 39:1310 have been met (i.e., where the governing authority has received *Page 4 
notification pursuant to La.R.S. 39:1311 or where there has been a change in operations upon which the original adopted budget was developed). Under such reasoning, the Council would not have had the authority to make any of the operating budget amendments contained in Livingston Parish Ordinance 09-06, since you have not indicated that either prerequisite was met.
Analysis under Yenni
Under the court's reasoning in Yenni, a political subdivision operating under a home rule charter form of government can provide for additional circumstances under which it would be permissible for the budget to be amended. In this instance, the applicable provision of the Charter is Section 5-04, Amendments to the Operating Budget, which provides as follows:
 A. Supplemental Appropriations: If during the fiscal year the president certifies that there are available for appropriation funds in excess of those estimated in the operating budget, the president may make supplemental appropriations for the year up to the amount of such excess in the same manner required for adoption of the budget.
 B. Emergency Appropriations: To meet a public emergency affecting life, health, property or the public peace, the council may make emergency appropriations. Such appropriations shall be made by emergency ordinance in accordance with the provisions of this charter. To the extent that there are no available unappropriated funds to meet such appropriations, the council may by such emergency ordinance borrow money in sums necessary to meet the emergency. The repayment of such sums shall be a fixed charge upon the revenues of the fiscal year next following the fiscal year in which the sums are borrowed.
 C. Reduction of Appropriations: If at any time during the fiscal year it appears to the president that the funds available will be insufficient to meet the amount appropriated, the president shall report to the council, without delay, indicating the estimated amount of the deficit, any remedial action taken and recommendations as to any other steps to be taken. The council shall then take such further action as it deems necessary to prevent a deficit.
 D. Subject to the limitations in Subsection F of this section, the council may, by ordinance, reduce any appropriation at any time.
 E. Transfer of appropriations: At any time during the fiscal year the president may transfer part or all of any unencumbered appropriation within programs, except that no transfer shall be made to or from the salary account unless approved by the council by ordinance. Such transfers shall not cause the total appropriated to be increased. An unencumbered appropriation balance may be transferred from one department, office or agency to another or from one program to another only upon council action by ordinance. *Page 5 
 F. Limitations: No appropriation for debt service may be reduced or transferred and no appropriation may be reduced below any amount required by law to be appropriated.
As you can see, Section 5-04 of the Charter delineates between four different types of amendments to the budget: supplemental appropriations; emergency appropriations; reduction of appropriations; and transfer of appropriations. Thus, we must analyze each of the budget amendments and determine their classification, so that we can ascertain whether the appropriate amendment requirements have been met. Only then would the Council have had the power to amend the budget under theYenni court's interpretation of La.R.S. 39:1310.
Analysis of Supplemental Appropriations underYenni
Section 5-04(A) describes the power to amend the budget for supplemental appropriations as a grant of power allocated to the president and requires the president to certify that there are funds available in excess of those estimated in the operating budget. Your letter provides that you have made no such certification. Since Section 5-02 of the Charter provides a mechanism for the Council to amend the budget before it is adopted, and Section 5-04 provides for amendments after the adoption of a budget, it logically follows, based on the language in Section 5-04(A), that after the budget is adopted, the power to make supplemental appropriations belongs to the president.
Concerning Ordinance 09-06, Sections 2, 6, 7 and 8 all appear to be supplemental appropriations to the budget. Section 2 increases the Health Insurance Budget by $117,000; Section 6 increases an appropriation in the Capital Outlay Budget by $2,097,191; Section 7 increases the budget for the District Attorney by $15,000; and Section 8 allocates $31,500 for a Public Information Officer contract. Accordingly, these sections of Ordinance 09-06 would fall under the category of "Supplemental Appropriations," as described by Section 5-04(A) of the Charter. Each one of these amendments functions to increase the total dollar amount originally allocated to certain budget items (if any was originally allocated thereto), without specifying the source of such additional funds.
Since you have not indicated that the president has certified that there are excess funds in the operating budget and, assuming no such certification was made, in accordance with the procedure for making amendments to the budget in Section 5-04(A) of the Charter, under Yenni, the Council was without authority to adopt amendments concerning supplemental appropriations described in Sections 2, 6, 7 and 8 of Ordinance 09-06.
Section 1 of Ordinance 09-06 also appears to be a supplemental appropriation to the budget. Section 1 reads like a transfer of funds, as it purports to move $160,000 from the grant budget into the General Fund. Nevertheless, according to the information you provided to our office, this amendment transfers money from a source that does not *Page 6 
currently exist in the budget. Therefore, although Section 1 reads like a transfer, it has the effect of being a supplemental appropriation, since the amendment increases the budget to the general fund by $160,000 without an adequate source of funding for those dollars. Hence, based upon the information you have provided, Section 1 should also be treated as a supplemental appropriation, and for the reasons stated above, would not be permitted under the Charter and Yenni.
Analysis of the Reduction and Transfer of Appropriationsunder Yenni
Section 5-04(C) of the Charter provides a mechanism for the president to amend the budget if it appears there are insufficient funds. Additionally, Section 5-04(D) provides that the Council may reduce appropriations at any time, subject to the limitations set forth in Section 5-04(F), which provides that the Council may not reduce any appropriation below the amount required by law to be appropriated and that no appropriation for debt service may be reduced or transferred.
With regard to Ordinance 09-06, Section 3 appears to reduce the budget on the expenditure for Construction in Progress — Roads by $500,000. Section 3 is classified as a reduction of appropriations, and thus would be permitted under Yenni unless otherwise prohibited by Section 5-04(F).
As for transfers, as stated above, Section 5-04(E) provides as follows:
 Transfer of appropriations: At any time during the fiscal year the president may transfer part or all of any unencumbered appropriation within programs, except that no transfer shall be made to or from the salary account unless approved by the council by ordinance. Such transfers shall not cause the total appropriated to be increased. An unencumbered appropriation balance may be transferred from one department, office or agency to another or from one program to another only upon council action by ordinance.
It is not clear whether all transfers must be initiated by the president or only transfers of any unencumbered non-salary appropriations within programs. When read as a whole, Section 5-04(E) could be interpreted to require all transfers to be initiated by the president, with the Council's approval only necessary in the case of transfers of any salary appropriations within programs and also for transfers from one department, office, agency or program to another.
Nevertheless, we believe that the first sentence of Section 5-04(E) indicates that the president must initiate a transfer of part or all of any unencumbered appropriation within programs. Further, the last sentence implies that only the Council has the authority to both initiate and approve a transfer of an unencumbered appropriation balance from one department, office or agency to another or from one program to another. *Page 7 
Section 4 of Ordinance 09-06 contains two amendments, the first of which transfers appropriations within the OEP fund related to the OEP Director's Salary. Thus, if the salary account was unencumbered, then the transfer of funds related to the OEP Director's Salary contained in Section 4 of Ordinance 09-06 would be permissible underYenni only if the president initiated such a transfer and the transfer was subsequently approved by the Council. In this case, the transfer was not initiated by the president and would thus not be permitted under the Charter and Yenni.
The second amendment contained in Section 4 of Ordinance 09-06 eliminates a transfer of $742,361 from the Road Fund to the OEP Fund. Similarly, Section 5 of Ordinance 09-06 eliminates the transfer from the Road Fund to the OEP Fund and transfers $2,097,191 from the Road Fund to the Capital Outlay Fund. We believe the elimination of a transfer is properly classified as a transfer and thus would be permitted under Section 5-04(E) andYenni, assuming the balances subject to the elimination are unencumbered. However, we note that a determination of whether or not these sections involve the transfer of encumbered funds would entail a fact specific analysis that our office cannot perform, as we are not finders of fact.
Conclusion
Again, under Tardo, the Council would not have had the authority to make any of the operating budget amendments contained in Livingston Parish Ordinance 09-06, since you have not indicated that either of the two prerequisites of La.R.S. 39:1310 have been met (i.e., that the governing authority has received notification pursuant to La.R.S. 39:1311 or that there has been a change in operations upon which the original adopted budget was developed).
Further, for the reasons described above, under the court's reasoning in Yenni, the Council was without the power to make the amendments contained in Sections 1, 2, 6, 7 and 8, because those amendments are supplemental appropriations, and the president has not certified that there are funds available for appropriation in excess of those appropriated in the operating budget, as required by Section 5-04 of the Charter.
Likewise, under Yenni, the president is not bound to implement the budget amendment contained in Section 4 that involve the transfer of funds related to the OEP Director's Salary, because you have not indicated that the transfer was initiated by the president as required by the Section 5-04(E) of the Charter.
Thus, it is the opinion of this office that, under either case discussed above, the president is not bound to implement the operating budget amendments adopted in Sections 1, 2, 6, 7 and 8 of Livingston Parish Ordinance 09-06 or the transfer of appropriations within the OEP fund related to the OEP Director's Salary, which is contained in Section 4 of that ordinance. *Page 8 
The second amendment contained in Section 4 of Ordinance 09-06 eliminates a transfer of $742,361 from the Road Fund to the OEP Fund. Similarly, Section 5 of Ordinance 09-06 eliminates the transfer from the Road Fund to the OEP Fund and transfers $2,097,191 from the Road Fund to the Capital Outlay Fund. We believe the elimination of a transfer is properly classified as a transfer and thus would be permitted under Section 5-04(E) andYenni, assuming the balances subject to the elimination are unencumbered. Additionally, because the Council has the power to reduce appropriations and to initiate and approve a transfer of an unencumbered appropriation balance from one department, office, agency or program to another under Sections 5-04(F) and 5-04(E), respectively, under Yenni, it would have had the power make the amendment proposed in Section 3 and the elimination of a transfer of $742,361 from the Road Fund to the OEP Fund contained in Section 4, unless otherwise prohibited by Section 5-04(F) of the Charter. However, the applicable jurisprudence is unclear as to whether the budget may only be amended when one of the two prerequisites of La.R.S. 39:1310 have been met (i.e., where the governing authority has received notification pursuant to La.R.S. 39:1311 or where there has been a change in operations upon which the original adopted budget was developed) as perTardo, or whether, alternatively, La.R.S. 39:1310 merely provides for two instances in which the budget must be amended as per Yenni.
We note that any appeal from the 21st
Judicial District Court for the Parish of Livingston would be made to the First Circuit Court of Appeals, which decided Tardo. On the other hand, the Yenni case is the latest decision interpreting La.R.S. 39:1310. Regardless, given the conflicting rulings between the First and Fourth Circuit Courts of Appeal inTardo and Yenni, respectively, we are unable to provide a definitive answer as to whether the president is bound to implement the reduction of appropriations contained in Section 3 Livingston Parish Ordinance 09-06 or the elimination of transfers of appropriations between funds as set forth in Sections 4 and 5 of that ordinance. In order to obtain a definitive interpretation of La.R.S. 39:1310 and the validity of those amendments, the president or the Council could file a petition for declaratory judgment in a court of competent jurisdiction.
Finally, we note that you have also asked us whether the president has the power to veto Ordinance 09-06. According to Section 2-13(B) of the Charter, the president has the power to veto such ordinance within ten days of submission of the ordinance to the president, provided the proper procedure for doing so is followed as outlined by that Section of the charter. However, pursuant to Section 2-13(C), the Council has the power to override such veto by a favorable vote of at least two-thirds of its authorized membership.[7] *Page 9 
We hope that this opinion adequately addresses the legal issues you have raised. If our office can be of any further assistance, please do not hesitate to contact us.
 With best regards,
 JAMES D. "BUDDY" CALDWELL ATTORNEY GENERAL
 BY: __________________________ BENJAMIN A. HUXEN II Assistant Attorney General
 JDC:BAH II
[1] 476 So.2d 997 (La.App. 1 Cir. Oct 08, 1985).
[2] Id. at 1001.
[3] Now La.R.S. 39:1310. See Acts 1999, No. 775, § 2, eff. July 2, 1999.
[4] 625 So.2d 301 (La.App. 4 Cir. 1993), writ denied,627 So.2d 642 (La. 1993).
[5] Id., 625 So.2d at 305.
[6] Id., 625 So.2d at 306.
[7] See Section 2-13 of the Charter.