Dear Mayor Morris,
Our office has received an opinion request from you concerning the validity of certain amendments to the City of Slidell's budget for FY 2010 under the City of Slidell's Home Rule Charter.
Section 5-02 of the City of Slidell's Home Rule Charter requires the mayor submit to the council an operating budget for each fiscal year. According to your request, the proposed budget you submitted to the council was adopted with several amendments. It is our understanding that the council adopted the original budget submitted by the mayor and subsequently adopted several amendments to the budget. All amendments were adopted prior to the beginning of the new fiscal year. You have asked whether the council had the authority to make and adopt those amendments.
The City of Slidell has adopted a home rule charter form of government in accordance with La.Const. art. VI, § 5 and La.R.S. 33:1395. Political subdivisions operating under a home rule charter form of government are subject to the minimum standards established in the Louisiana Local Government Budget Act. La.R.S. 39:1310 is pertinent to budget amendments and provides as follows:
When the governing authority has received notification pursuant to R.S. 39:1311, or there has been a change in operations upon which the original adopted budget was developed, the governing authority shall adopt a budget amendment in an open meeting to reflect such *Page 2 
change. When an independently elected parish official has received notification pursuant to R.S. 39:1311(A)[1], or when there has been a change in operations upon which the original adopted budget was developed, the independently elected official shall adopt a budget amendment and publish such amendment in the official journal as described by R.S. 39:1307(B). In no event shall a budget amendment be adopted proposing expenditures which exceed the total of estimated funds available for the fiscal year.
As noted above, La.R.S. 39:1310 states that a governing authority must amend its budget when it has received notification pursuant to La.R.S. 39:1311 or when there has been a change in operations upon which the original adopted budget was developed. As explained in La. Atty. Gen. Op. No. 09-0107, Louisiana jurisprudence is not harmonious as to whether La.R.S. 39:1310 merely sets forth two situations where it is mandatory that the budget be amended but does not prohibit amending the budget for other reasons or whether the two reasons noted in La.R.S. 39:1310 are the sole reasons a budget may be amended.
In Tardo v. Lafourche Parish Council,476 So.2d 997 (La.App. 1 Cir. Oct 08, 1985), the First Circuit Court of Appeals addressed whether the Lafourche Parish Council could amend its budget prior to the start of the fiscal year. In that case, the parish home rule charter provided for amendment of its budget after adoption but prior to the beginning of the fiscal year only in cases of an emergency. Id. at 1001. The court determined that, under La.R.S. 39:1309 (now La.R.S. 39:1310, See
Acts 1999, No. 775, § 2, eff. July 2, 1999) the governing authority can only amend the budget prior to the fiscal year and then only if a "change in operations" has occurred. Thus, Tardo indicates that the budget may only be amended when one of the two prerequisites of La.R.S. 39:1310 have been met (i.e., where the governing authority has received notification pursuant to La.R.S. 39:1311 or where there has been a change in operations upon which the original adopted budget was developed).
In Yenni v. Parish Council of Parish of Jefferson throughEvans, 625 So.2d 301 (La.App. 4 Cir. 1993), writ denied,627 So.2d 642 (La. 1993), the Fourth Circuit Court of Appeals had to determine whether the Jefferson Parish Council had the power to amend the budget during the fiscal year, despite the fact that the *Page 3 
parish's home rule charter did not contain specific authority or requirements for making budget amendments. The court determined that the La.R.S. 39:1310 merely provides for two instances where it is mandatory that the governing authority amend its budget.Id., 625 So.2d at 305. Thus, in the court's opinion, the council had the authority to amend the budget during the fiscal year for other reasons, because it was not otherwise specifically prohibited by the home rule charter or ordinance. Id.,625 So.2d at 306.
Therefore, the First Circuit and the Fourth Circuit conflict in their interpretation of La.R.S. 39:1310 in that the First Circuit allows budget amendments only if one of the two prerequisites of La.R.S. 39:1310 have been met (i.e., where the governing authority has received notification pursuant to La.R.S. 39:1311 or where there has been a change in operations upon which the original adopted budget was developed), and the Fourth Circuit allows budget amendments where there are no legal prohibitions against such amendments.
Post-adoption budget amendments are addressed in Section 5-05 of the City of Slidell's Home Rule Charter.
A. Supplemental Appropriations: If during the fiscal year the mayor certifies that there are available for appropriation revenues in excess of those estimated in the operating budget, the mayor may present a supplemental budget for the disposition of such revenues, and the council by ordinance may make supplemental appropriations for the year up to the amount of such excess in the same manner required for adoption of the budget.
B. Emergency Appropriations: To meet a public emergency affecting life, health, property or the public peace, the council may make emergency appropriations. Such appropriations may be made by emergency ordinance in accordance with the provisions of Section 2-13.
To the extent that there are no available unappropriated revenues to meet such appropriations, the council may by such emergency ordinance borrow money in sums necessary to meet the emergency in accordance with procedures established by state law.
C. Reduction of Appropriations: If at any time during the fiscal year it appears to the mayor that the revenues available will be insufficient to meet the amount appropriated, the mayor shall report to the council without delay, indicating the estimated amount of the deficit, any remedial action taken and recommendations as to any other steps to be taken. The council shall then take such further action as it deems necessary to prevent a deficit. Subject to the limitations in this section, the council may, by ordinance, reduce any appropriation at any time. *Page 4 
D. Transfer of Appropriations: At any time during the fiscal year the mayor may transfer part or all of any unencumbered appropriation balance among programs within a department, office or agency. Upon written request by the mayor, the council may by ordinance transfer all or part of any unencumbered appropriation balance from one department, office or agency to another.
E. Limitations: No appropriation for debt service may be reduced or transferred, and no appropriation may be reduced below any amount required by law to be appropriated or by more than the amount of the unencumbered balance thereof.
Your first question concerns the council's authority to pass an amendment increasing or decreasing sales tax revenue projections after the budget has been adopted. Charter Section 5-03 requires the budget to contain a "detailed estimate of all anticipated revenues and other income." The budget you proposed to the council estimated $19,210,000 in sales tax revenue for FY 2010. The council decreased the projection to $18,500,000 after the budget had been adopted.
Neither the Charter nor the Local Budget Act expressly gives the council the authority to reduce or increase the anticipated revenues in the budget after it has been adopted. Thus, under Tardo, the council would not have the authority to change the revenue projections because La.R.S. 39:1310 does not provide authority to do so.[2] However, under the court's reasoning in Yenni, the council could amend the anticipated revenue projections because doing so was not specifically prohibited by the City's Charter.
We note that the City's Home Rule Charter, as currently written, has certain safeguards in place to protect the council in the event the mayor has over or underestimated the revenue projections. Charter Section 5-05(C) mandates that if, during the fiscal year, it appears the available revenues will be insufficient, the mayorshall approach the council immediately with the amount of the deficit and recommendations for how to reduce spending. The council must then take action to prevent a deficit. In doing so, the council may reduce any appropriations already made. Similarly, if during the fiscal year the mayor certifies that extra revenue is available, Charter Section 5-05(A) provides that the mayor may present a supplemental budget for the disposition of such revenues, and the council by ordinance may make supplemental appropriations for the year *Page 5 
up to the amount of such excess in the same manner required for adoption of the budget.
Your proposed budget also contained $10,000,000 in anticipated revenue from a millage renewal that was the subject of an election in October 2009. The council removed this anticipated revenue from the budget it adopted and you question whether they had the authority to do this. As discussed above, neither La.R.S. 39:1310 nor the Charter currently gives the council the authority to reduce or remove the amount of anticipated revenues in the budget once the budget has been adopted.
However, if these changes in revenue projections were made by the council after the mayor submitted his budget but before the budget was adopted (i.e., during the budget adoption process), Charter Sections 2-11 and 2-12 would apply as set forth the procedures for passing ordinances. In that situation, if the mayor sends an ordinance to the council, the council may amend it and then vote to approve the ordinance as amended. The council is not forced to take an up or down vote on the proposed ordinance as submitted by the mayor. Once the mayor receives the ordinance approved by the council, he may sign it, veto it, or fail to take any action on it for seven days, in which case, it will be considered approved. Charter Section 2-12. If vetoed, the council may override the veto and readopt the ordinance by a favorable vote of at least two-thirds of its authorized membership. Charter Section 2-12(C).
The council also adopted an amendment which requires the City Finance Director to create a reserve account for FY 2010 salaries and benefits. Under the provisions of this amendment, the finance director must transfer into the reserve account all funds in the FY 2010 budget that represent salaries and benefits for employee positions that were vacant as of June 1, 2009, as well as new and contract positions. The amendment further requires that the monies in the reserve account cannot be used for any purpose other than salaries and benefits for positions in the budget. Lastly, it requires that any transfer of funds from the account be approved by the council.
This amendment violates Charter Section 5-05(D). Section 5-05(D) gives the mayor the authority to transfer or reallocate "part or all of any unencumbered appropriation balance among programs within a department, office or agency." By requiring the unencumbered funds from different departments to be placed into a single reserve account within the City Finance Department, the amendment usurps the mayor's authority to determine how or whether unencumbered excess revenue within a department should be transferred or reallocated.
In addition to the questions listed above regarding amendments to the current budget, you have also asked the following, general questions: *Page 6 
1. Can the council pass an ordinance that requires council approval for unclassified salary increases after a budget is adopted? Can the council require its approval to amend, increase, or reallocate any municipal staffing pay grade levels after the budget is adopted?
Ordinance No. 21-1 sets forth the procedures for salary changes for classified and unclassified employees. As it relates to unclassified employees, the ordinance provides as follows:
(a) All unclassified employee salary levels shall be identified by a separate line item in the operating budget documents for each fiscal year.
(b) If the mayor, city council or any other city official should intend to grant a salary adjustment above the amount budgeted by line item for any unclassified employee, such authority shall make public notification of such intentions by causing the item to be placed on the council agenda for approval prior to granting such increase, and shall give the justification, effective date, funding method, amount of increase, and new salary level for the affected employees.
Thus, pursuant to this ordinance, regardless of whether the mayor, city council or any other city official initiates the request for a raise for an unclassified employee, the "item," i.e., the raise, must be "placed on the council agenda for approval."
The procedure for changing the pay grade levels for classified employees is set forth in Charter Section 21-1(D) and provides:
(D) Salary increases for classified employees shall be subject to the following procedure:
(1) The mayor may propose to the council the granting of step increases to all classified employees. Upon council approval thereof, step increases shall be implemented according to the city's pay plan.
(2) The mayor may propose to the council the granting of cost of living adjustments to all classified employees. Upon council approval thereof, cost of living adjustments shall be implemented at the level set by the council.
(3) The mayor may propose to the council such other salary increases for all classified employees he deems proper. Upon approval thereof, such other salary increases shall be implemented at the level set by the council.
(4) The city's annual budget shall reflect all salary increases approved by the council. *Page 7 
Based on this section of Ordinance 21-1, it appears the council's approval is already required for pay increases to classified employees.
As there is already an ordinance in place that requires council approval for pay increases for unclassified and classified employees, we assume your question is whether this ordinance is valid or whether it divests the mayor of any of the rights he is given under the Charter. When an ordinance violates a provision of a home rule charter, that ordinance is to be stricken and declared invalid, or there has to be an amendment to the home rule charter to make the ordinance valid. La. Atty. Gen. Op. Nos. 86-51, 93-749.
As discussed earlier in this opinion, Charter Section 5-05(D) provides, "[a]t any time during the fiscal year the mayor may transfer part or all of any unencumbered appropriation balance among programs within a department, office, or agency. Upon written request by the mayor, the council may by ordinance transfer all or part of any unencumbered appropriation balance from one department, office or agency to another."
Assuming that the funds used to pay for a raise granted to an unclassified or classified employee would be unencumbered funds already in the department, office, or agency in which the employee is employed, the mayor has the authority to authorize such raises without council approval. Thus, Ordinance 21-1, which requires the council's approval for pay increases, would violate Charter Section 5-05(D). It is only if the funds used for the pay increases would be coming from unencumbered funds in a department, office, or agency other than the one the employee is already being paid by that the council could have any authority to deny the raise by refusing to transfer funds between departments.
2. Who has the authority to hire bond counsel?
This question was addressed in light of the City of Slidell's Home Rule Charter in La. Atty. Gen. Op. No. 93-5. The opinion noted that under the City's plan of government, the legislative power is vested in the council (Charter Section 2-01) and except as otherwise provided by the charter, the mayor is the chief executive officer of the City and exercises general executive and administrative authority over all departments, offices and agencies of the City (Charter Section 3-01). Further, the Charter provides that no special legal counsel may be employed by the City except by written contract and approval of the council. Charter Section 4-02(D). The opinion concluded as follows:
Considering the relevant provisions of the Home Rule Charter and the Slidell Code, it is the opinion of this office that the chief executive officer exercises general executive and administrative authority, except with regard to auditors. Further, it is our opinion *Page 8 
that the mayor is the only official authorized to execute contracts on behalf of the City, whether the contract provides for services to be rendered to the executive branch (mayor) or legislative branch (council). Contracts not executed by the mayor, or executed by others, including council members, would not be valid, and such contracts should not be honored by the mayor, nor should payment be made by him in connection with such contract.
With regard to the present situation, it is our opinion that the mayor should select, recommend and propose to the council (by way of preparation of a written contract) the attorney to be employed as special legal counsel. Thereafter, the written contract should be submitted to the council for their approval. (Should the council not approve the contract, the mayor should submit another contract to the council for approval.) After the council's approval, the written contract should then be signed by the mayor on behalf of the City. During the term of the contract, the mayor should administer and authorize and make payment pursuant to the contract.
La. Atty. Gen. Op. No. 93-5. Thus, both the mayor and the council play a role in hiring bond counsel. The mayor offers his selection to the council and the council either approves or rejects the proposed contract. Once the council approves the contract, the mayor is authorized to execute the contract. Finally, we note that pursuant to La.R.S. 42:261, "all legal services for parish governing authorities . . . in reference to the issuance of bonds . . . shall be under the supervision, control and authority of the attorney general." Once the council approves a contract for bond counsel, the contract will need to be sent to this office for approval.
3. Can the council require its approval to increase the number of employees in a department after the budget is adopted?
Under the Slidell Home Rule Charter, the mayor is the chief executive officer of the city and has general executive and administrative authority over all departments, offices and agencies of the City, unless otherwise provided by the Charter. Charter Section 3-01. Similarly, Charter Section 4-01 provides that "[e]xcept as otherwise provided by this charter all departments, offices and agencies shall be under the direction and supervision of the mayor, and the directors of all departments created by or under this charter shall be appointed by the mayor and shall serve at the pleasure of the mayor." Therefore, it is within the mayor's power and discretion to increase the number of employees in a department. The mayor's decision cannot be subject to approval by the council as this may encroach upon his authority under the Charter. *Page 9 
4. Can the council require its approval to change the composition of staffing (i.e., job titles) within a department after the budget is adopted?
The response to this question is based on the same reasoning as the response to the previous question. As chief executive officer of the municipality, the mayor has authority over the day-to-day operations of the City. Changing job titles within a department is a part of this authority. As such, the council cannot require its approval if the mayor chooses to change job titles within a department. Doing so would encroach upon the mayor's authority under the Charter.
5. Can the council require its approval to make line item transfers from salaries and benefits to other operating line items within a department after the budget is adopted?
Per Charter Section 5-05(D), the mayor has the authority to transfer part or all of any unencumbered appropriation balance among programs within a department, office, or agency. Because the Charter expressly gives this authority to the mayor, the council cannot require its approval for these transfers. However, if the mayor does not want to make a transfer within a department, but rather from one department to another department, then he must submit such a request in writing to the council. The council may then, by ordinance, transfer all or part of any unencumbered appropriation balance from one department, office, or agency to another. Charter Section 5-05(D).
We trust this adequately responds to your request. However, if our office can be of further assistance, please do not hesitate to contact us.
Yours very truly,
JAMES D. "BUDDY" CALDWELL Attorney General
BY:__________________________ Lindsey K. Hunter Assistant Attorney General
JDC/LKH/crt
[1] Although not applicable in this case, La.R.S. 39:1311(A) requires notice be given in writing when: (1) Total revenue and other sources plus projected revenue and other sources for the remainder of the year, within a fund, are failing to meet total budgeted revenues and other sources by five percent or more.
(2) Total actual expenditures and other uses plus projected expenditures and other uses for the remainder of the year, within a fund, are exceeding the total budgeted expenditures and other uses by five percent or more.
(3) Actual beginning fund balance, within a fund, fails to meet estimated beginning fund balance by five percent or more and fund balance is being used to fund current year expenditures.
[2] We note that the City of Slidell falls within the jurisdiction of the First Circuit Court of Appeal, which decided Tardo. On the other hand, the Yenni case is the latest decision interpreting La.R.S. 39:1310. Regardless, given the conflicting rulings between the First and Fourth Circuit Courts of Appeal in these two cases, we are unable to provide a definitive answer as to whether the council has the authority to amend revenue projections once the budget has been adopted for any other reason than those set forth in La.R.S. 39:1310.