Dear Mr. Purpera:
You have requested an opinion of this office regarding FEMA funds as they relate to the budgeting process under the Louisiana Local Government Budget Act ("LGBA"), La.R.S. 39:1301-1315. Specifically, you have asked the following:
 (1) Are FEMA funds treated differently from other revenue for budgeting purposes?
 (2) Once funds are budgeted, is the process for amending the budget upon receipt of additional funds the same as is required when other revenues are received?
The LGBA establishes minimal requirements for the budget process, which standards may be augmented by the political subdivision. Under the LGBA, a political subdivision "shall cause to be prepared acomprehensive budget presenting a complete financial plan for each fiscal year for the general fund and each special revenue fund." La.R.S. 39:1305. Paragraph (C) states that the budget document shall include:
 (2)(a) A statement for the general fund and each special revenue fund showing the estimated fund balances at the beginning of the year; estimates of all receipts and revenues to be received; revenues itemized by source; recommended expenditures itemized by agency, department, function, and character; other financing sources and uses by source and use; and the estimated fund balance at the end of the fiscal year. *Page 2 
Unfortunately, the LGBA does not define the term "general fund" or "special revenue fund." It simply says that all general and special revenue funds must be accounted for in the political subdivision's budget. Regardless of whether FEMA funds are placed into the political subdivision's general fund or into a special fund created for disaster recovery purposes, if the political subdivision plans to spend the funds during a budget year, they must be included in the budget under the LGBA.
While the Single Audit Act and OMB Circular A-133 ensure that federal funds are audited for the federal government, the LGBA controls budgeting of public funds at the local level.[1] FEMA funds received by a public entity are public funds that must be accounted and budgeted for. Under the LGBA, all funds of a governmental entity must be included in the entity's budget. There is nothing in the LGBA which suggests that any public funds are to be excluded from the budgeting requirements of the LGBA.
We are aware of the argument that because FEMA funds are often received multiple times throughout the year instead of in one lump sum, it would be too onerous a requirement on political subdivisions to constantly amend their budgets to include new FEMA funds. La.R.S. 39:1305(C)(2)(a) permits a political subdivision to include "estimates of all receipts and revenues to be received; recommended expenditures itemized by agency, department, function, and character; other financing sources and uses by source and use; and the estimated fund balance at the end of the fiscal year." Therefore, it is our opinion that, in the event a political subdivision is receiving FEMA funds on a reimbursement basis, the political subdivision may include an estimate of the total amount of funds it expects to receive and amend the budget quarterly to reflect situations where the estimate was too high or too low.
Your request points out that the LGBA contains a provision which states that "[n]othing shall prohibit the expenditure of funds in cases of emergency." La.R.S. 39:1314. The LGBA defines an "emergency" as "an unforeseen event bringing with it destruction or injury of life or property or the imminent threat of such destruction or injury." Id. The Louisiana Homeland Security and Emergency Assistance Disaster Act, specifically La.R.S. 29:727, [2] provides that a *Page 3 
local emergency may be declared by the parish president and "shall continue until the parish president finds that the threat of danger has been dealt with to the extent that emergency conditions no longer exist." Paragraph (D) also gives the parish president the authority to extend the local state of emergency. La.R.S. 29:727(F) provides that in addition to any other powers conferred upon the parish president by the constitution, laws, or by home rule charter or plan of government, the parish president may:
 (1) Suspend the provisions of any regulatory ordinance prescribing the procedures for conduct of local business, or the orders, rules, or regulations of any local agency, if strict compliance with the provisions of any ordinance, order, rule, or regulation would in any way prevent, hinder, or delay necessary action in coping with the emergency.
 (2) Utilize all available resources of the local government as reasonably necessary to cope with the local disaster or emergency.
 * * *
The Homeland Security Act allows the parish president to suspend the provisions of any "order, rule, or regulation of any local agency" if following the regulations would prevent responding to the emergency. This statute cannot be interpreted to allow the parish president to suspend provisions of state statutes, such as the LGBA, when responding to an emergency. Any exemption from state law would need to come from the state legislature.
In response to your second question regarding whether the process for amending a budget upon receipt of additional funds not accounted for in the original budget is the same as is required when other revenues are received, we turn to La.R.S. 39:1310(A), which provides the guidelines for amending a budget under the LGBA:
 When the governing authority has received notification pursuant to R.S. 39:1311, or there has been a change in operations upon which the original adopted budget was developed, the governing authority shall adopt a budget amendment in an open meeting to reflect such change. When an independently elected parish official has received *Page 4 
notification pursuant to R.S. 39:1311(A)[3], or when there has been a change in operations upon which the original adopted budget was developed, the independently elected official shall adopt a budget amendment and publish such amendment in the official journal as described by R.S. 39:1307(B). In no event shall a budget amendment be adopted proposing expenditures which exceed the total of estimated funds available for the fiscal year.
As noted above, La.R.S. 39:1310 states that a governing authority must amend its budget when it has received notification pursuant to La.R.S. 39:1311 or when there has been a change in operations upon which the original adopted budget was developed. We are aware that Louisiana jurisprudence is not harmonious as to whether La.R.S. 39:1310 merely sets forth two situations where it is mandatory that the budget be amended but does not prohibit amending the budget for other reasons or whether the two reasons noted in La.R.S. 39:1310 are the sole reasons a budget may be amended. However, there is no disagreement among the circuits that a political subdivision must amend its budget when there has been a "change in operations."[4]
The LGBA does not define what a "change in operations" means in the context of La.R.S. 39:1310. There has also been little interpretation of this phrase by the courts or by our office. InTardo v. Lafourche Parish Council,476 So. 2d 997 (La. App. 1 Cir. 10/8/85), the First Circuit noted:
 The term "change in operations" was considered by the trial court to require some change in the programs of the Parish, not a change in the way the economy is progressing. The court felt there should be a real and substantial change, not one merely speculative in nature. Expert testimony introduced by the Council demonstrating a downward economic progression in various revenue producing *Page 5 
elements of the adopted budget was held not to meet the burden of proving a "change in operations." Upon careful review this court will defer to this factual determination by the trial court. And, while we will not attempt a comprehensive definition of what is meant by a "change in operations," we suggest such things as curtailing, eliminating or adding a particular service for the people would meet the criteria, as well as adopting additional revenue producing measures to permit the enhancement of services for the people. Tardo, 476 So.2d 997, 1002-1003 (internal citations omitted).
Similarly, in La. Atty. Gen. Op. No. 86-214, our office stated that" . . . the transfer of budgeted funds or funds designated for a specific purpose within a department from one program or function to another program or function constitutes a change in operations upon which the original adopted budget was developed."
Our office, like the Tardo court, will not "attempt a comprehensive definition of what is meant by a "change in operations." Following the guidance in Tardo and in La. Atty. Gen. Op. No. 86-214, we are of the opinion that where a parish receives FEMA funds that are used for "curtailing, eliminating or adding a particular service for the people," a "change in operations" has occurred and the budget must be amended. The amount of FEMA funds that a parish must receive in order to constitute a "change in operations" is a factual determination that our office cannot make.
In conclusion, it is the opinion of this office that FEMA funds are not treated differently from other revenue for budgeting purposes and should be included in a political subdivision's annual budget even if only shown as an estimated amount. We further opine that if the receipt of FEMA funds after the budget has been adopted results in a political subdivision having a change in operations, the budget must be amended to reflect receipt of the funds.
We trust this adequately responds to your request. However, if our office can be of further assistance, please do not hesitate to contact us.
 Yours very truly,
 JAMES D. "BUDDY" CALDWELL Attorney General
 BY: __________________________ Lindsey K. Hunter Assistant Attorney General
 JDC/LKH/chb
[1] The Single Audit Act establishes audit requirements for state and local governments that receive a specified amount of federal assistance in any fiscal year. A single audit is intended to provide a cost-effective audit for non-federal entities in that one audit is conducted in lieu of multiple audits of individual programs.
[2] La.R.S. 29:727(D) provides: A local disaster or emergency may be declared only by the parish president, except as otherwise provided in this Chapter. In that event, the state of emergency shall continue until the parish president finds that the threat of danger has been dealt with to the extent that emergency conditions no longer exist. The state of emergency may be terminated by executive order or proclamation, but no state of emergencymay continue for longer than thirty days unless extended by theparish president. The state of emergency or disaster may be terminated by the governor, a petition signed by a majority of the surviving members of either house of the legislature, or a majority of the surviving members of the parish governing authority. The document terminating the state of emergency or disaster may establish a period during which no other declaration of emergency or disaster may be issued. All executive orders or proclamations issued under this Subsection shall indicate the nature of the emergency, the area or areas which are or may be affected, and the conditions which brought it about. Any order or proclamation declaring, continuing, or terminating a local disaster or emergency shall be given prompt and general publicity and shall be filed promptly with the office of emergency preparedness and the office of the clerk of court. (Emphasis added).
[3] La.R.S. 39:1311(A) requires notice be given in writing when: (1) total revenue and other sources plus projected revenue and other sources for the remainder of the year, within a fund, are failing to meet total budgeted revenues and other sources by five percent or more.
(2) Total actual expenditures and other uses plus projected expenditures and other uses for the remainder of the year, within a fund, are exceeding the total budgeted expenditures and other uses by five percent or more.
(3) Actual beginning fund balance, within a fund, fails to meet estimated beginning fund balance by five percent or more and fund balance is being used to fund current year expenditures.
[4] The First Circuit Court of Appeal in Tardo v. LafourcheParish Council, 476 So. 2d 997 (La. App. 1 Cir. 10/8/85) and the Fourth Circuit Court of Appeal in Yenni v. Parish Council ofParish of Jefferson through Evans,625 So. 2d 301 (La. App. 4 Cir. 1993), writ denied,627 So. 2d 642 (La. 1993) reached different conclusions regarding whether La.R.S. 39:1310 merely sets forth two situations where it is mandatory that the budget be amended but does not prohibit amending the budget for other reasons or whether the two reasons noted in La.R.S. 39:1310 are the sole reasons a budget may be amended. A detailed explanation of the split in the circuits can be found in La. Atty. Gen. Op. No. 09-0107 but is not relevant to the facts of this opinion as both courts agree that a change in operations triggers the need for budget amendments.